GARTLAND STEAMSHIP COMPANY, a Corporation, Libelant,

v.

ELGIN, JOLIET AND EASTERN RAIL-WAY COMPANY, a Corporation, and The Motorship Fredborg, her engines, machinery, boats, tackle, apparel, furniture and equipment, Respondents.

ELGIN, JOLIET AND EASTERN RAIL-WAY COMPANY, a Corporation, Libelant-Appellee,

v.

THE Motorship FREDBORG, Her Engines, Tackle, Apparel and Furniture and Rederi A/B Ragne, a Corporation of the Kingdom of Sweden, Owners and Operators of The Motorship Fredborg, Respondents-Appellants.

No. 12839.

United States Court of Appeals Seventh Circuit.

April 20, 1960.

Rehearing Denied May 23, 1960.

Stuart B. Bradley, Chicago, Ill., Richard G. Ashworth, New York City, Warren A. Jackman, Chicago, Ill., for appellants, Fredborg and Rederi A/B Ragne, Bradley, Pipin, Vetter & Eaton, Chicago, Ill., Haight, Gardner, Poor & Havens, New York City, of counsel.

Harlan L. Hackbert, Robert L. Hesse, Chicago, Ill., for appellee, Stevenson, Conaghan, Hackbert, Rooks and Pitts, Chicago, Ill., of counsel.

Before HASTINGS, Chief Judge, CASTLE, Circuit Judge, and PLATT, District Judge.

CASTLE, Circuit Judge.

This is an appeal from a final decree in admiralty entered on September 14, 1959 in the United States District Court for the Northern District of Illinois, Eastern Division. Appellant Rederi A/B Ragne, respondent and claimant of the respondent motor vessel Fredborg in the Court below, appeals from so much of said decree as held the Fredborg jointly liable with appellee (libelant below) Elgin, Joliet and Eastern Railway Company (hereinafter called E J & E) for damages arising out of a collision on July 20, 1955 when the E J & E drawbridge near the mouth of the Calumet River in South Chicago suddenly swung closed and there was a collision between the Fredborg and the bridge.

As a result of the collision with the Fredborg, the E J & E bridge was damaged and required extensive repairs. Until such time as repairs of the bridge and appurtenances were completed, the

E J & E was required to reroute its rail traffic over other railroads.

The District Court held that the total amount of damages in the consolidated causes must be borne equally by Elgin, Joliet and Eastern Railway Company and the M/V Fredborg and that the total damages subject to equal division was $256,328.17. It was further ordered by the District Court that Elgin, Joliet and Eastern Railway Company recover from M/V Fredborg the sum of $81,073.22, being one-half of the total damages of $256,328.17, less $47,090.86 heretofore contributed by M/V Fredborg for settlement of the detention claims of Gartland Steamship Company and other libelants similarly situated. The District Court also ordered that interest accrue in favor of the Elgin, Joliet and Eastern Railway Company on the said sum of $81,073.22 from the date of the entry of the decree. It further held that the said Elgin, Joliet and Eastern Railway Company should not recover interest on any amounts paid by it in settlement of the detention claims of Gartland Steamship Company and other libelants similarly situated.

The contested issue is whether the District Court's finding that the Fredborg was partially at fault for its collision with the bridge is "clearly erroneous".

About 3:45 p. m., C. D. S. T., July 20, 1955 the motorship Fredborg of Swedish flag, owned and operated by Rederi A./B. Ragne, struck or collided with the bridge of Elgin, Joliet and Eastern Railway Company which crosses the Calumet River at South Chicago, Illinois.

The Fredborg, with partial cargo on a draft of 9' 1" forward and 13' 3" aft, 258' overall and deadweight tonnage of 2,950 tons, entered the outer harbor at South Chicago at approximately 3:31 p. m., C. D. S. T., on July 20, 1955, bound for a dock westerly or above E J & E bridge. The weather was clear and there was neither appreciable wind nor current in the river.

The Fredborg had aboard U. S. Lake Survey Chart No. 755 and the 1955 issue of Great Lakes Pilot, prepared and published by U. S. Lake Survey office, a division of the Department of the Army. The vessel was not aware of the information contained in Supplement No. 1 of the Pilot with regard to a synchronized amber light and horn acknowledging signal established on the E J & E bridge.

E J & E bridge crosses Calumet River 0.63 miles from the river mouth. From the mouth of the river through the bridge the river lies for an inbound vessel in a generally westerly direction. The bridge is swing type on a center pier and contains two draws.

Entering the outer harbor through the northerly gap in the breakwater, the Fredborg checked her engines to half speed and as she passed through the gap she had headway of about 9 miles per hour. From that point she proceeded through the outer harbor and entered the river.

As the Fredborg proceeded through the harbor and entered the river she noted that the E J & E bridge was swung open. As she entered the river the Fredborg further reduced her engines to slow speed and she directed her course for the south or her left-hand draw of the bridge.

Navigation regulations applicable to the Chicago Harbor and the Calumet River required that:

"A vessel approaching the bridge and desiring to pass shall give a signal consisting of three short sounds of the whistle or horn given in rapid succession."

There was testimony that vessels inbound in the river usually sound the signal for the E J & E bridge when they are not less than one-half mile from the bridge.

The Fredborg sounded no signal until she was about 600' from E J & E bridge when she sounded the required signal for the City of Chicago traffic bridge at East 92nd Street, which is the next

bridge westerly or above the E J & E bridge. After sounding the signal the Fredborg continued for the south draw of E J & E bridge.

As the Fredborg approached the E J & E bridge, the bridge tender was advised that rail traffic was approaching the bridge on the tracks from the south, and that the vessel Sierra, moving lakeward, would soon pass through the bridge. Thereafter, the bridge tender was signaled that a work motor car had approached the bridge on the tracks, from the south and desired to pass over the bridge. Prior to the collision the bridge tender was engaged in conversation with another employee of the railroad, and was engaged in giving him instructions about the duties of a bridge tender. When the Fredborg was about 100' from the entrance to the south draw of the E J & E bridge, the bridge tender, without looking lakeward to ascertain whether or not a vessel was approaching the bridge, began to close it by swinging it in a clockwise direction. Immediately the Fredborg reversed her engines. Her headway was not stopped and with her forward end she struck the end of the swinging bridge. As the Fredborg and the swinging bridge collided, the bridge was carried clockwise to a position about ¾ closed. By reason of the collision the bridge was carried off its center pier and was stationary in that position.

The E J & E bridge tender failed to inform the Fredborg by an appropriate signal that the bridge was being closed. The bridge tender commenced to close the bridge and did close the bridge across the course of the Fredborg.

The Fredborg at and prior to the collision maintained a proper lookout; she was not navigated at an excessive rate of speed; when the bridge commenced to close the Fredborg did not fail to take any measures that were possible to stop her headway. However, those in charge of the navigation of the Fredborg were careless and inattentive to their duties in that they did not give the proper signal at the proper time. They should have known that in the absence of a proper signal at the proper time the bridge might be closed at any time.

The carelessness and inattention to their respective duties on the part of the bridge tender and the Fredborg and the swinging of the bridge by the bridge tender proximately caused and contributed to the collision of the Fredborg and the bridge, the closure of the bridge and the consequent obstruction of navigation.

The finding of the District Court was not erroneous. Therefore the judgment of the District Court is affirmed.

We have considered appellee's motion to strike portions of appellant's appendix and brief and deny the same.

Affirmed.